```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

| | |
|---|---|
| **MARGARET WHITE, on Behalf of** )<br>**Herself and All Others** )<br>**Similarly Situated.,** )<br>)<br>    **Plaintiff,** )<br>)<br>v.                             )      No. 08-2478<br>)<br>**BAPTIST MEMORIAL HEALTH CARE** )<br>**CORPORATION, and BAPTIST** )<br>**MEMORIAL HOSPITAL-DESOTO,** )<br>**INC.,** )<br>)<br>    **Defendants.** ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Margaret White ("White") alleges that Defendants Baptist Memorial Health Care Corporation and Baptist Memorial Hospital-DeSoto, Inc. ("Baptist Desoto") (collectively, "Baptist") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et. seq., by failing to compensate her and other similarly situated hourly employees for all hours worked. (See Compl. ¶¶ 1-2, ECF No. 1.)

Before the Court is Baptist's March 23, 2010 motion for summary judgment on White's individual FLSA claim. (See Defs.' Mot. for Summ. J., ECF No. 90.) White responded in opposition on August 16, 2010. (See Pl.'s Resp. to Defs.' Mot. for Summ. J., ECF No. 122.) Baptist replied on September 3, 2010. (See

Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J., ECF No. 130.) For the following reasons, Baptist's motion is GRANTED.

## I.  Background[1]

From August 2005 through August 2007, White worked as a nurse at Baptist DeSoto. (See Statement of Undisputed Facts ¶ 1, ECF No. 90-1.) ("Facts")  While employed by Baptist, White primarily worked in the "fast track" area of the Baptist DeSoto emergency department, where she handled patients who had come to the emergency department with relatively minor health issues. (Id. ¶ 2.)  White also "floated" in the emergency department from the beginning of her shift at 6:45 a.m. until the fast track area opened at 10:00 a.m.  (Id. ¶ 3.)  While floating, White assisted with triage, admissions, and charts.  (Id.)

During her September 2005 orientation, shortly after starting her employment, White received a copy of Baptist's employee handbook (the "Handbook").  (See id. ¶ 4.)  According to the Handbook, employees working shifts of six or more hours were to receive an unpaid meal break period that would be automatically deducted from their pay checks.  (See id. ¶ 5.)

---

[1] All facts in this Part come from Baptist's Statement of Undisputed Material Facts. (See Statement of Undisputed Facts, ECF No. 90-1.)  Because White has not responded to Baptist's statement, Baptist's facts are deemed admitted. See W.D. Tenn. Civ. R. 7.2(d)(3) (requiring a party opposing summary judgment to respond to the moving party's statement of undisputed facts "by affixing to the response copies of the precise portions of the record relied upon to evidence . . . that the . . . designated material facts are at issue"); Akines v. Shelby Cnty. Gov't, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007) (explaining that, where the non-moving party fails to follow Local Rule 7.2(d)(3), courts in this judicial district "consider the [moving party's] statement of undisputed material facts as having been admitted").

The Handbook provided that, if an employee missed her meal break or if her break were interrupted, due to her workload, staffing shortages, or another reason, the employee would receive compensation for the time worked. (Id.) On September 16, 2005, White signed an orientation checklist stating that her supervisor, Chad Jones, had reviewed various Baptist policies with her, including the meal break policy. (See id. ¶ 6.)

White was aware that, if she worked any time in addition to the normal hours of her shift, she was to record that time in an "exception log" so that she would receive compensation for it. (Id. ¶ 7.) White also knew that, if she worked through or during a meal break, she was to report that time in the exception log. (Id.) Baptist employees were instructed to record in the exception log any and all time spent performing work during meal breaks, whether that work resulted in a meal break being completely missed or only interrupted. (Id. ¶ 8.)

White used the exception log to record instances where she had missed her meal break in its entirety and where her break had been interrupted. (Id. ¶ 9.) According to White, when she used the exception log to record meal breaks missed because her entire unit had worked through them, she received full compensation for the time she had recorded and worked. (Id. ¶ 10.) Although she alleges that she was not paid on certain occasions when she had recorded that she had missed her meal

3

break individually, White has also admitted that, when she recorded a "no lunch" entry in the exception log on February 23, 2007, she was paid for that time. (Id. ¶ 11.) Other entries in the exception log demonstrate that White's entire unit did not miss its meal break that day. (Id.)

At some point during her employment, White stopped recording her missed meal breaks in the exception log, although she had been told to record all hours that she worked. (Id. ¶ 15.) White does not know when she experienced missed or interrupted meal breaks and was not compensated for that work. (Id. ¶ 16.) She did not keep records of instances where she was not compensated for work performed during meal breaks. (Id.)

In addition to the exception log, White was aware of the general procedure to report and correct payroll mistakes. (See id.¶ 12.) She knew that she could report a payroll issue to a nurse manager, who would then resolve the issue. (See id.) Although White acknowledges that, when she used that procedure, mistakes in her compensation were "handled immediately," she did not use it to address Baptist's alleged failure to compensate her for missed meal breaks because she felt she would be "fighting an uphill battle." (Id. ¶¶ 12-13.)

**II. Jurisdiction**

Because White alleges violations of the FLSA, this Court has subject matter jurisdiction under the general grant of federal question jurisdiction in 28 U.S.C. § 1331.

**III. Standard of Review**

Under Federal Rule of Civil Procedure 56, the party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting [her] claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor. See id. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**IV. Analysis**

Congress enacted the FLSA in 1938 to provide a "minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). "Consistent with this goal, the [FLSA] requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week." Wood v. Mid-America Mgmt. Corp., 192 F. App'x 378, 379-

80 (6th Cir. 2006) (quoting Acs v. Detroit Edison Co., 444 F.3d 763, 764-65 (6th Cir. 2006)) (internal quotation marks omitted); see 29 U.S.C. § 207(a)(1). To establish a prima facie case for relief under the FLSA, an employee "must prove by a preponderance of evidence that he or she 'performed work for which he [or she] was not properly compensated.'" Myers v. Copper Cellar Corp., 192 F.3d 546, 551 (6th Cir. 1999) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946), superseded by statute on other grounds as stated in Carter v. Panama Canal Co., 463 F.2d 1289, 1293, (D.C. Cir. 1972)); see also O'Brien v. Ed Donnelly Enters., 575 F.3d 567, 602 (6th Cir. 2009) (citations omitted).

Baptist argues that, because White failed to report her missed or interrupted meal breaks in the exception log, she cannot show by a preponderance of the evidence that she performed uncompensated work in excess of forty hours per week. (See Mem. in Supp. of Defs.' Mot. for Summ. J. 10-12, ECF No. 90-1.) ("Baptist's Mem.") Although White has acknowledged that she has no records that would show when she worked during meal breaks without receiving compensation (see Facts ¶¶ 15-16), she argues that there are two genuine issues of material fact. The first is whether her reporting missed and interrupted meal breaks in the exception log would have been "futile." (See Mem. in Supp. of Pl.'s Resp. to Defs.' Mot. for Summ. J. 5-7, ECF No.

7

122-1.) ("Pl.'s Mem.") The second is whether employees were instructed to report "partially missed breaks" in the exception log. (See id. 7-8.)

Under FLSA regulations, "[w]ork not requested but suffered or permitted is work time" if the "employer knows or has reason to believe that [the employee] is continuing to work." 29 C.F.R. § 785.11. That said, "the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions." Wood, 192 F. App'x at 381. "An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid." Id.

Courts in this circuit have denied recovery in FLSA cases where an employee is aware of her employer's system for reporting work that falls outside the employee's normal, forty-hour shift but fails to report that work. See id., 192 F. App'x at 380-81; Berger v. Cleveland Clinic Found., No. 1:05 CV 1508, 2007 U.S. Dist. LEXIS 76593, at *37-40 (N.D. Ohio Sept. 29, 2007). In Wood, the Sixth Circuit affirmed a district court's grant of summary judgment in favor of an employer where an employee had reported some, but not all, of his overtime work and the overtime work consisted of duties similar to those the employee performed during his regular hours. See Wood, 192 F.

8

App'x at 380-81 (explaining that "an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself"). In Berger, a district court granted summary judgment in favor of an employer where an employee knew that he could be reimbursed for missing full lunch breaks but nonetheless failed to report them. See 2007 U.S. Dist. LEXIS 76593, at *39 (rejecting the employee's argument that reporting those missed lunches would have been futile).

Although Baptist automatically deducted meals breaks from employees' compensation, it also maintained a policy of compensating employees for all hours they worked. (See Facts ¶ 5.) Whether an employee missed her meal break entirely or merely experienced an interruption, she was to receive compensation. (See id.) White has admitted that she knew she was to report any time she worked during meal breaks in the exception log. (See id. ¶ 7.)

Despite her knowledge of Baptist's policy, White argues that using the exception log for missed meal breaks was futile because she was required to obtain the approval of her supervisor when recording missed breaks in the log. (See Pl.'s Mem. 7.) According to White, "[i]f an employee is told that they [sic] need supervisory approval of an exception, and no supervisor is willing to approve that exception, a jury could

9

easily determine that use or attempted use of the [exception log] is futile." (See id.) If using the exception log were found to be futile, Baptist's records would be "inaccurate or inadequate," White would be able to prove her lost compensation by submitting an estimate of her damages, and Baptist would be required to negate that estimate. (See id.)

White correctly argues that, "if the employer kept inaccurate or inadequate records, the plaintiff's burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate." Myers, 192 F.3d at 551 (citation omitted). That burden-shifting framework, first articulated by the Supreme Court in Mt. Clemens Pottery, 328 U.S. at 688, applies only to a plaintiff's ability to prove damages, see O'Brien, 575 F.3d at 603. "Mt. Clemens Pottery does not help plaintiffs show that there was a violation under the FLSA. It would only allow them to prove damages by way of estimate, if they had already established liability." Id.

White's futility argument does not establish that she performed work for which she was not compensated for at least two reasons. First, the facts before the Court demonstrate that, when White used the exception log, she received full compensation. (See Facts ¶ 9.) Although White maintains that she received compensation only for meal breaks that her entire

10

unit missed, the undisputed facts demonstrate that, on at least one occasion, February 23, 2007, White reported a "no lunch" in the exception log and received compensation for that missed meal break, although her entire unit did not miss it. (See id. ¶¶ 10-11.) That demonstrates that using the exception log was not futile.

Second, "ceasing to keep track of one's missed lunches does not solve the problem of not being reimbursed, but instead precludes the possibility of future reimbursement by preventing the employer from discovering the unpaid work." See Berger, 2007 U.S. Dist. LEXIS 76593, at *39. By failing to make use of the exception log, White prevented Baptist from knowing whether it owed her overtime compensation under the FLSA. See Wood, 192 F. App'x at 381. There is no evidence that White otherwise notified Baptist of particular times when she worked during her meal breaks and no evidence that Baptist had knowledge of those times. Because "[a]n employer cannot satisfy an obligation that it has no reason to think exists," White's futility argument does not allow her to establish Baptist's liability under the FLSA. See id.; see also Berger, 2007 U.S. Dist. LEXIS 76593, at *39.

White attempts to distinguish her futility argument from the plaintiff's argument in Berger, 2007 U.S. Dist. LEXIS 76593, at *37-40, by focusing on the requirement that she obtain

11

approval from a supervisor before noting a missed meal break in the exception log. (See Pl.'s Mem. 6-7.) In her post-deposition affidavit, White avers that she "was told that [she] could not make a claim for payment for a missed meal break unless [her] charge nurse or [her] supervisor confirmed that [she had] missed the meal break and approved of [her] claim for payment before the end of [White's] or their shift." (See White Decl. ¶ 6, ECF No. 122-2.) She also avers that "my supervisors and charge nurses rarely gave their approval to claim payment for a missed meal break unless my entire unit had to miss the break." (See White Decl. ¶ 7.)

In Berger, the district court rejected a similar futility argument. See Berger, 2007 U.S. Dist. LEXIS 76593, at *26-29, 39. In that case, an employee had not been reimbursed for approximately five to seven meal breaks that had been recorded in the employer's log, had received a "dirty look" when he mentioned those breaks to his supervisor, and had received no assistance from the employer's human resources department when reporting his payroll issues. See id. at *26-29. However, because the plaintiff had been "compensated for numerous instances in which he worked overtime . . . [and] reimbursed for a missed lunch on September 21, 2001, all of which he had noted in the logbook," the court concluded that recording overtime in the employer's exception log was not futile. Id. at *39.

12

("These examples demonstrate that recording one's work deviations was not futile.")

Although White was required to obtain her supervisor's approval when recording a missed meal break in the exception log, that requirement does not mean that using the log was futile. White received compensation when she recorded missed meal breaks in the exception log, and there is evidence that her supervisors approved missed meal breaks. (See Facts ¶¶ 9-11; White Decl. ¶ 7.) Also, unlike Berger, the record here demonstrates that whenever White used Baptist's payroll correction procedure, mistakes in her compensation were "handled immediately." (See Facts ¶ 12.) Therefore, White's argument that using the exception log was futile because Baptist required her to obtain the approval of her supervisor is not well-taken.

White alternatively argues that there is a genuine issue of material fact about whether employees were instructed to report "partially missed breaks" in the exception log. (See id. 7-8.) White relies on her post-deposition affidavit, in which she states, "I did not know I could claim payment for meal breaks when I was interrupted and did not receive my entire break." (See White Decl. ¶ 6.) Baptist argues that this Court should not consider that portion of White's affidavit because it conflicts with her prior deposition testimony. (See Reply to

13

Pl.'s Resp. to Defs.' Mot. for Summary Judgment 5-8, ECF No. 130.) ("Baptist's Reply")

The Supreme Court has held that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (citations omitted); see O'Brien, 575 F.3d at 588 (applying the rule to an affidavit filed after a motion for summary judgment that conflicted with the affiant's prior deposition testimony in an FLSA case) (citations omitted).  A court "deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony."  Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir. 2006) (citations omitted).  "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction."  See id. (citation omitted).  "If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an

14

attempt to create a sham fact issue." Id. (citation and internal quotation marks omitted).

During her deposition, White testified as follows:

> Q. If you put it in the exception log, did you get paid for it?
> A. Got paid for it.
> Q. Okay. Do you ever recall an instance where you put something in the exception log and you were not paid for it?
> A. Yes.
> Q. Can you tell me what that was?
> A. Some of my lunch breaks, <u>I did not get my full break</u>, and some days I didn't get a break at all. And when I would get my paycheck, I could look at it and tell if I was paid or not paid.
> Q. And you are saying you put that in the exception log but you weren't paid for it?
> A. Right.
> Q. So <u>you went and wrote it down that you didn't get a full lunch</u> or you missed your lunch?
> A. <u>Yes.</u>

(See White Dep. 86:9-87-1, Nov. 18, 2008, ECF No. 90-8 (emphasis added).) Her testimony demonstrates that White recorded both missed and interrupted meal breaks in the exception log. By recording interrupted meal breaks in the exception log, she was claiming a right to compensation for working during those breaks. (See Facts ¶ 8.)

That White recorded interrupted meal breaks in the exception log directly contradicts the statement in her post-deposition affidavit that she "did not know [she] could claim payment for meal breaks when [she] was interrupted and did not receive my entire break." (See White Decl. ¶ 6.) White has not

15

attempted to explain the contradiction between her deposition testimony and her later affidavit. See Aerel, S.R.L., 448 F.3d at 908. Therefore, the Court must disregard White's affidavit on that point. See id.

White argues that "[n]umerous plaintiffs in this action have claimed that their understanding of the meal break policy at Baptist did not include compensation for partially missed breaks, and/or that the subject of partially missed breaks was never mentioned to them," citing the declarations of various opt-in plaintiffs. (See Pl.'s Mem. 8.) Whether other, opt-in plaintiffs knew that they were permitted to claim payment for interrupted meals is irrelevant to whether White knew. The undisputed facts in the record demonstrate that White knew she could use the exception log to receive compensation for interrupted meals and that she did so. (See Facts ¶ 7; White Dep. 86:9-87:1.)

Based on the record before the Court, a reasonable jury could not conclude that White performed work for which she was not properly compensated. See Myers, 192 F.3d at 551. Because White has offered no evidence suggesting that Baptist had reason to know when she missed meal breaks, she cannot recover for unpaid wages under the FLSA. See Wood, 192 F. App'x at 381; Berger, 2007 U.S. Dist. LEXIS 76593, at *37-40. Because she has failed to establish a prima facie claim under the FLSA, summary

16

judgment is appropriate.  See Wood, 192 F. App'x at 381; Berger, 2007 U.S. Dist. LEXIS 76593, at *37-40.

### V.  Conclusion

For the foregoing reasons, Baptist's motion for summary judgment on White's FLSA claim is GRANTED.

So ordered this 23d day of March, 2011.

>                         s/ Samuel H. Mays, Jr.
>                         SAMUEL H. MAYS, JR
>                         UNITED STATES DISTRICT JUDGE